

**STANDARD TERMS & CONDITIONS OF SALE**

**26 February 2020**

These Standard Terms & Conditions of Sale ("STCS") shall apply to all Contracts for the sale of Bunker Fuels and other related products and services by BlackCoral Energy Sarl with effect from 26th of February 2020 ("the Effective Date") until further notice.

# 1. DEFINITIONS AND TERMS:

**1.1** In these Terms and Conditions, the words in bold shall have the following meanings:

| Term | Definition |
|---|---|
| **'Agent'** | any party acting on behalf of the Buyer and/or the Vessel. |
| **'Arrival Notice'** | the notice sent from the Buyer to the Seller containing not less than the following information together with any other information advised to the Buyer to be required: 1) Call sign, 2) Vessel's Name, 3) Owners, 4) Flag, 5) Agents, 6) Length Overall, 7) Gross tonnage, 8) Net Tonnage, 9) Deadweight, 10) Ex-Names, 11) Expected time of arrival, 12) IMO Number. |
| **'Bunker Delivery Receipt'** | a document issued at the point of delivery by the Seller or the Seller's Agent recording the specification and quantities of Bunker Fuel delivered to a Vessel, can be called Bunker Delivery Receipt, Bunker Delivery Note or similar. |
| **'Bunker Fuel'** | fuel products supplied for use by the Vessel's engines and machinery. |
| **'Buyer'** | all parties, jointly and severally, named on the Order Confirmation who have contracted with the Seller to buy Products, including their assignees or successors. |
| **'Contract'** | means the contract between the Buyer and Seller for the purchase of Products consisting of these STCS and the Order Confirmation issued by the Seller. |
| **'Seller's Bank Account'** | the bank account stipulated on the Seller's invoice for payment in respect of the Contract. |
| **'Independent Surveyor'** | an independent survey Company or a surveyor appointed either by the Seller in its sole discretion or jointly appointed by the Seller and the Buyer. |
| **'Order Confirmation'** | a written confirmation issued by the Seller setting out the details of the supply of Products including 1) Identity of the Buyer; 2) Grade and volume of products; 3) Supply date; 4) Place of supply; 5) The agreed price. |
| **'Other Products'** | all Products the Seller delivers or contracts to deliver which are not Bunker Fuel. |
| **'Place of Supply'** | the location where the Products are to be supplied. |
| **'Price'** | the price stated in the Order Confirmation; and whether or not identified in the Order Confirmation (i) any applicable taxes, VAT or other duties; and (ii) any delivery costs including any charges for delivery outside normal working hours at the Place of Supply or for rescheduled delivery. |
| **'Products'** | Bunker Fuel and/or Other Products being the subject of a Contract. |
| **'Seller'** | the party that issues the Order Confirmation or stated in the Order Confirmation as Seller. |
| **'Spill'** | escape, spillage or discharge of Products. |
| **'Supply Equipment'** | the Seller's or the physical supplier's barges, tankers, trucks, pipes and pumps used to supply Products to the Vessel. |
| **'Vessel'** | the vessel, rig, platform or other installation to which the Products are being delivered or in respect of which the Buyer has contracted to buy the Products. |

**1.2**  These STCS shall take precedence over any terms that the Buyer may seek to impose and replace and/or supersede any of the Seller's earlier standard contractual conditions. No variation shall be binding unless agreed in writing by the Seller.

**1.3**  In the event of a conflict between the STCS and the Order Confirmation the Order Confirmation shall prevail but only to the extent of the conflict and in all other respects the STCS shall apply.

**1.4**  The Buyer buys and the Seller sells Products in accordance with the Contract and these STCS shall be incorporated into all Order Confirmations and Contracts whether or not express reference to the STCS is made therein.

## 2. ORDER CONFIRMATION

**2.1**  A binding Contract comes into existence when the Seller sends the Order Confirmation to the Buyer.

**2.2**  Where a Contract is entered into by an Agent, whether disclosed or undisclosed, then such Agent with notice of these STCS shall (i) be jointly and severally liable with the Buyer for the proper performance of all the obligations of the Buyer under this Contract as if acting as a principal; and/or (ii) guarantee the Buyer's obligations under the Contract.

**2.3**  All orders of Products are considered to be emanating from the Master of the vessel, even if relayed by the Buyer to the Seller and even if no written request for the Master of the vessel exists, and the Buyer's obligations under a Contract shall be treated as a primary lien on the Vessel.

## 3. ARRIVAL NOTICE

**3.1**  Within 24 hours of a Contract being formed the Buyer shall send to the Seller a compliant Arrival Notice confirming arrival in accordance with the delivery period stated in the Order Confirmation. Thereafter further Arrival Notices shall be sent 3, 2 and 1 days before the Vessel's arrival at the Place of Supply. If the Contract is entered less than 3 days from delivery, then Arrival Notices shall be provided daily from the date of the Contract.

**3.2**  The Buyer or its appointed agent at the Place of Supply shall ensure compliance with all requests from the Seller or its sub-contractors concerning the Vessel's arrival.

**3.3**  The Seller is entitled to cancel the Contract if the Buyer fails to provide Arrival Notices as aforesaid.

**3.4**  The Seller shall revise the Price and date of supply or shall have the right to cancel the Contract if the Vessel is not available to receive Products within 12 hours of the original delivery period or within 2 hours of the arrival time as stated in the last Arrival Notice.

## 4. PRICE

**4.1**  The Seller shall issue its invoice for the Price promptly upon delivery, but for the avoidance of doubt the Buyer's liability to pay the Price shall not be dependent upon the issue of an invoice.

**4.2**  The Buyer shall pay the Price in accordance with the terms of the Contract.

**4.3**  Any taxes, duties or other charges borne by the Seller caused by any change in the Seller's contemplated source of supply or otherwise, coming into existence after the Contract has been concluded, shall be added to the Price and an additional or revised invoice will, when necessary, be issued.

**4.4**  The Seller shall have a lien on the Vessel for all sums payable in respect of Products delivered to a Vessel.

## 5. PAYMENT

**5.1** Payment shall be made in United States Dollars (or any equivalent currency as the Seller may require) by bank transfer to the Seller's Bank Account, net of all banking charges. Payment to any other bank account shall not release the Buyer from its payment obligations.

**5.2** Payment must be made in full without any discount or deduction, and there shall be no withholding either in part or in full by reason of any set-off, counter-claim or for any other reason, whether relating to the Contract or past agreements or Contracts.

**5.3** If any sum due pursuant to any Contract is not paid within the agreed time or if contrary to the provisions herein payment is withheld or set-off for any reason the Buyer shall pay compensation to the Seller of 20% (twenty per cent) of the outstanding amount. Such compensation is a reasonable pre-estimate of the Seller's loss, considering the additional management time incurred in dealing with late payment, the loss of opportunity to reinvest the missing funds and currency exchange fluctuations. This late payment compensation is payable in addition to the Price and accrued interest.

**5.4** Subject to clause 5.5 payment of the Price shall be due immediately upon delivery of the Products or in all other cases immediately upon an invoice being issued.

**5.5** The Seller may grant credit deferring payment beyond the period stated in clause 5.4, in which case the credit period shall be stated on the Order Confirmation. The granting of credit is in the Seller's discretion and the Seller may withdraw credit at any time and demand immediate payment if the Seller has reason to alter its assessment of the credit risk. Withdrawal of credit shall be by written notice, and Seller need not provide reasons. Where the Seller withdraws credit before delivery of Products then the Seller may withhold delivery until payment of the Price or alternatively the Seller may cancel the order, without recourse by the Buyer.

**5.6** The Buyer shall not be entitled to insist upon provision of a Bunker Delivery Receipt before making payment, but the Seller shall nevertheless use reasonable endeavours to provide a Bunker Delivery Receipt with its invoice.

**5.7** Without prejudice to any other rights or remedies available to the Seller the Buyer shall pay interest to the Seller at the rate of 2% (two per cent) per month (compounded monthly for each month, or part thereof,) on all balances that remain unpaid from the date that they were due or, upon the withdrawal of credit, became due for payment. The Seller may issue interest notes which shall be binding as to the amount of interest due. The Buyer's obligation to pay interest is not conditional upon interest notes being issued.

**5.8** The Seller has total authority and discretion as to the allocation of payments made by the Buyer and is not bound by any allocation advised by the Buyer. Without prejudice to the generality of the foregoing the Seller is entitled to (i) settle invoices for Products as it sees fit and irrespective of their date; and (ii) extinguish claims for compensation, interest, legal fees or any other sums due from the Buyer in priority to invoices for Products.

**5.9** If the Seller incurs any costs in relation to attempts to collect any overdue sums the Buyer shall indemnify the Seller for those costs and shall pay the same upon first demand. Such costs include but not limited to attestation and translation costs, fees of third-party debt collection agencies, lawyer's fees and communication/postal costs.

## 6. DELIVERY

**6.1** The Buyer is responsible for ensuring that it obtains all necessary permits and complies with all regulations applicable to the receipt, handling and use of the Products to be supplied at the Place of Supply. The Buyer shall indemnify the Seller for all consequences, losses and or damages including fine and penalties suffered by the Seller as a result of the Buyer or the Vessel or its crew failing to observe any such regulations or to obtain any such permits. The Seller shall be entitled to cancel the Contract in the event of a breach of this clause.

**6.2** The Buyer shall comply with all requests for information from the Seller, the Seller's Agents or sub- contractors and from any port agent appointed by the Seller.

**6.3** The Buyer shall hold harmless and indemnify the Seller in respect of any liability and damage arising from any acts or omissions of the Buyer or its servants in connection with the delivery of Products or the bunkering operations.

**6.4** The Seller shall use reasonable endeavours to make delivery as agreed however no guarantee of the time or rate of delivery is given and the Seller shall not be liable for any losses or damages including demurrage, howsoever caused, suffered by the Buyer due to any delay in delivery. The Seller will not be liable for any loss incurred by the Buyer due to any failure or delay in supply due to (a) congestion affecting the physical supplier of Products at the delivery facilities, (b) prior commitments of available barges, (c) local customs, pilots, port or other authorities or (d) shortage of Products of the required specification or (e) failure or under-performance of the Supply Equipment, or (f) any circumstances out of the direct control of the Seller.

**6.5** Responsibility for connections and disconnections of the delivery hose is the Buyer's and the Buyer will render all necessary assistance and equipment to take delivery. The Vessel will provide a free, safe and always accessible side for the delivery. The Master of the supply barge shall determine whether mooring alongside the Vessel is safe and if it is not the Seller may delay or cancel delivery and all costs incurred will be for the Buyer's account.

**6.6** Any damage caused by contact or collision shall be dealt with by the Buyer directly with the owners of the supply barge. The Seller shall not be held liable for any such damages and the Buyer shall indemnify the Seller against any claims made against the Seller arising out of such incident.

**6.7** Lightering/barging charges and related mooring, unmooring and port dues shall be for the account of the Buyer, who will be liable for all demurrage or additional expenses incurred if the Buyer causes delay in the supply of Products.

**6.8** The Buyer is committed to take the full quantities of Products specified in the Order Confirmation and the Buyer shall be responsible for any costs resulting from the Buyer's failure to take complete delivery, including but not limited to any loss of profit and any loss on the resale of the Products. The Buyer shall bear the risk of the return transport, barge or trucks demurrage and the costs of storing or selling of the Products.

**6.9** In order that Products supplied by the Seller but not yet paid for can be identified at all times the Buyer is obliged to keep (i) all Other Products in such manner that they can be identified to the Contract; and (ii) to keep Bunker Fuel supplied pursuant to a single Contract segregated from other bunker fuels delivered to the Vessel.

**6.10** If the supply is delayed by the Buyer for whatever reason or the Vessel fails to leave the Place of Supply immediately, the Buyer shall indemnify the Seller for any consequent loss or damage suffered by the Seller including losses arising due to the delay in the supply of other vessels.

**6.11** Where it is necessary according to the regulations or practice of the Place of Supply that a port agent be appointed for the delivery of bunkers the Seller or the Seller's sub-contracted supplier may appoint a port agent on the Buyer and Vessel's behalf. The Buyer and the Vessel shall be jointly and severally liable for any fees, expenses, charges, taxes, duties or fines incurred on behalf of the Vessel or Buyer.

## 7. PROPERTY AND RISK

**7.1** Title to the Products shall pass only when the Buyer has paid for the Products and paid all other sums due to the Seller under the relevant Contract or other Contracts.

**7.2** The Buyer shall become liable for the Bunker Fuel immediately upon the Bunker Fuel passing the Supply Equipment's manifold, and risk of the Bunker Fuel shall pass to the Buyer at that time.

**7.3** The Buyer shall become liable for Other Products immediately upon them passing the Vessel's rail or being delivered to the designated place of delivery, and risk shall pass to the Buyer at that time.

## 8. QUALITY

**8.1** The Buyer shall have the sole responsibility of the nomination of the grade of Products requested for the Vessel.

**8.2** Unless otherwise stated in the Order Confirmation, Bunker Fuel sold shall conform to those specifications defined under the prevailing ISO Standard or in the absence of such Bunker Fuel being available at the Place of Supply the Bunker Fuel shall be of the same quality generally offered for sale at the Place of Supply for the grade of Bunker Fuel specified by the Buyer. The Bunker Fuel shall be used exclusively for the operation of the machinery of the Vessel identified in the Contract.

## 9. QUANTITY

**9.1** The quantity of Bunker Fuel delivered by the Seller to the Buyer shall be established according to soundings or other measurements taken by the Seller from the Supply Equipment or shore tanks which shall be conclusive evidence of the quantities delivered and shall be recorded in the Bunker Delivery Receipt which the representative of the Buyer shall be invited to sign. The Bunker Delivery Receipt shall be binding evidence of the quantity delivered, regardless of the Buyer's failure to sign the same. Measurements by any other means shall not be binding on the Seller, save for a measurement according to clause 9.2.

**9.2** The Buyer may request that an Independent Surveyor measure the quantity of Bunker Fuel delivered by measuring the Supply Equipment or shore tanks and shall issue his survey report. The Buyer shall pay the Independent Surveyor's costs and expenses in relation to the measurements of the quantity of Bunker Fuel delivered. The measurement carried out by the Independent Surveyor shall then be conclusive evidence of the quantities delivered. Both the Seller and Buyer shall have the right to witness the measurement operations.

## 10. SAMPLING

**10.1** The Seller shall arrange for samples to be taken during delivery of the Bunker Fuel. Unless otherwise agreed in writing the samples shall be taken in accordance with the sampling procedures customary at the Place of Supply.

**10.2** Sampling shall be performed in the presence of the Buyer and Seller, or their representatives, but the failure of the Buyer to attend the sampling process shall not prejudice the validity of the samples.

**10.3** All samples shall be sealed, labelled and signed by both the Buyer and Seller, or their representatives and two samples shall be retained by the Buyer one being the MARPOL compliant sample. The remaining samples shall be retained by the Seller or its representatives.

| | |
|---|---|
| 10.4 | No samples drawn by the Buyer's personnel or samples subsequently taken shall be allowed as evidence of the quality of the Bunker Fuel. If any seals have been removed or tampered with by an unauthorised person, such samples shall be deemed to have no value as evidence. |
| 10.5 | Where there is a complaint concerning the quality of the Bunker Fuel, one of the aforesaid samples retained by the Seller shall be tested by an independent laboratory mutually appointed by the Buyer and Seller. Testing shall be limited to analysis of the disputed properties and the results shall be conclusive and binding evidence of the quality of the Bunker Fuel supplied to the Vessel. In accordance with ISO 4259 tolerances in respect of reproducibility or repeatability in quality are accepted. |
| 10.6 | The Seller and the Buyer shall seek to agree on an independent laboratory to perform analysis, but if the Buyer fails to reply to the Seller's request to agree an appointment within 7 days from receipt of such notice or if the parties cannot agree then the Seller shall select the laboratory and such selection shall be final and binding for all parties involved. |

## 11. CLAIMS

| | |
|---|---|
| 11.1 | Any complaint related to the delivered quantity of the Bunker Fuel must be advised by the Buyer or the Master by telephone and in writing immediately that the grounds for complaint are known failing which any claim shall be deemed to be waived and barred. Comments inserted in the Bunker Delivery Receipt or in a separate protest handed to the physical supplier shall not qualify as notice. |
| 11.2 | Any complaint related to the quality of the Bunker Fuel delivered shall be made in writing to the Seller immediately that the Buyer is aware of the grounds for complaint and in no circumstances later than 15 days from the date of delivery to the Vessel. Failure to make timely notification as stipulated in this clause any claim shall be mean any claim is deemed waived and barred. |
| 11.3 | A written claim for the purposes of clauses 11.1 and 11.2 must provide a complete and comprehensive explanation of the circumstances and basis of the claim, including where applicable the quantities short and/or the discrepancies in quality, and include copies of all supporting documents including the vessel's logs evidencing the matters complained of. |
| 11.4 | Where a claim is made in accordance with clauses 11.1 and 11.2 the Buyer shall cooperate with the Seller and the Seller representatives such that the Seller may investigate the claim, and where requested board and inspect the Vessel, interview the crew and the review and copy relevant Vessel documents. |
| 11.5 | The Buyer will take all reasonable steps and actions to mitigate any damages, losses, costs and expenses related to any claim of alleged off-specification or defective Bunker Fuel, including where possible consuming the Bunker Fuel with use of purification tools or other appropriate measures. |
| 11.6 | The Buyer will take all reasonable steps to preserve the Seller's recourse against the physical supplier of Bunker Fuel or any culpable third party. |
| 11.7 | The Seller shall be entitled to set off losses caused by the Buyer's breach of this clause 11 against any liability the Seller has to the Buyer. |
| 11.8 | The Buyer's submission of any claim does not relieve it of responsibility to make full payments as required under the Contract and the Buyer shall not be entitled to set off any claim from sums due to the Seller. |
| 11.9 | Any claims against the Seller in respect of a Contract, including those notified in accordance with the provisions of these STCS, must be brought before the relevant court within 6 months from the date of delivery of the Products, failing which such claims shall be deemed waived and shall be time barred. |

## 12. LIABILITY

12.1 The Seller's liability arising out of a Contract howsoever caused and including the negligence of the Seller, its servants, sub-contractors or agents and whether based in tort or contract and including claims for quality and pollution shall be limited to the lesser of (i) US$500,000, or (ii) the Price of the Products giving rise to the claim on which the Seller's liability is based. For example, where a Contract provided for the supply of two grades of Bunker Fuel and liability arises from one grade being off specification then only the Price for the off specification Bunker Fuel shall be taken into account in calculating the limit of the Seller's liability.

12.2 Under no circumstances shall the Seller be liable for consequential losses, including but not limited to, delay, detention, demurrage, charter hire, crew wages, pilotage, towage, port charges, lost profits or increased cost or expenses for obtaining replacement fuel. The Seller shall not be liable under any circumstances for punitive damages.

12.3 When compensating for the replacement of parts the Seller shall be entitled to a reduction in the replacement value of 20% (twenty per cent) for each year or fraction thereof for which the replaced part has been in use.

12.4 The Buyer shall indemnify the Seller against any claims, losses or costs of whatever kind related to the Contract, including the legal costs of dealing with such claims, instituted by third parties against the Seller to the extent that such claims exceed the Seller's liability towards the Buyer according to this clause.

## 13. LIEN

13.1 It is agreed and acknowledged that a lien over the Vessel is created for the price of the Products supplied together with any interest accrued. The Buyer, if not the Owner of the Vessel, hereby expressly warrants that they have full authority of the Agents/Traders/Owners/Managers/Operators/Charterers to pledge the Vessel in favour of the Seller and that they have given notice of the provisions of this Contract to them. The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien(s) attaching to a Vessel.

13.2 The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

13.3 The Buyer or the Vessel or its owners must notify the Seller of its intention to exclude the liability of the Vessel at least 48 hours in advance of the supply by sending written notice to legal@blackcoralenergy.com, failing which any notice or any stamp in the Bunker Delivery Receipt seeking to vitiate the Seller's maritime lien on the Vessel shall be of no effect.

## 14. COMPLIANCE AND ENVIRONMENTAL PROTECTION

14.1 The Seller has the option to immediately cancel the Contract for the account and risk of the Buyer if at any time the Seller, in its sole discretion, has reasonable grounds to believe that the Vessel, the charterer of the Vessel, the fully or partly owner(s) of the Vessel, any officers of the Vessel, the operator and/or manager of the Vessel or any other person or entity in any way related to the Contract or delivery is/are in any way listed on the US OFAC Specially Designated Nationals List or covered by any US, UN- and/or EU sanctions or covered by any sanctions of any other jurisdiction and/or administration.

Under no circumstances can the Seller be held liable for any loss, delays, claims or damages of whatever kind suffered by the Buyer due to a cancellation under this Article.

The Buyer must inform the Seller immediately if the Buyer becomes aware of or has reasons to believe that any of the above items are fulfilled/apply. Should the Buyer breach its obligation to inform the Seller, the Buyer shall fully indemnify and keep the Seller harmless for any damage or loss caused by such breach, including consequential or liquidated damaged.

**14.2** The Buyer acknowledges that anticorruption laws and regulations, including but not limited to the U.S. Foreign Corrupt Practices Act ("FCPA"), shall apply to the parties.  The Buyer and Seller shall comply with all applicable anticorruption laws and regulations and will not, offer, promise, pay, or authorize the payment of any money or anything of value, or take any action in furtherance of such a payment, whether by direct or indirect means, to any public official or private individual to influence the decision of such person in
the performance of his duties to a government or to his company. Any breach of this clause will void the related Contract and in the sole discretion of the Seller any other Contract between the parties, making any claims for payment, delivery or any other obligation of the Seller under this Agreement void. The Buyer is liable for any and all costs or losses incurred by the Seller due to such breach and/or a Contract becoming void consequently.

**14.3** The Buyer must comply with all national and international trading, pollution, environmental and health and safety regulations concerning the receipt and use of Products and shall indemnify the Seller for all financial consequences, including clean-up costs and fines, of a breach of this provision.

**14.4** The Buyer and the Vessel shall promptly take all such action as is reasonably necessary to mitigate the effects of any Spill occurring during a delivery of Products.  The Seller shall nevertheless be entitled to take or arrange such measures as it deems reasonable to remove pollutants and mitigate the effect of a Spill. The Buyer shall cooperate and render such assistance as is required by the Seller and shall indemnify and hold the Seller and its representatives harmless against any damages, expenses, claims or liabilities of whatever nature, unless such Spill is proven to be caused solely by the Seller's negligence.

**14.5** The Buyer shall provide or procure all documents and information concerning any Spill for the Seller as the Seller may demand or as may require by applicable laws or regulations.

## 15. SUBSTITUTION

**15.1** The Seller shall be entitled to substitute itself a third party for the performance of all or part of its obligations.

## 16. FORCE MAJEURE

**16.1** Neither the Buyer nor the Seller shall be responsible for any loss or damage resulting from any delay or failure in delivery or receipt in Products hereunder due to fire, explosion or mechanical breakdown, storms, earthquakes, floods, tidal waves, war, military operations, national emergency, civil commotion, strikes or other differences with workmen unions, or from any delay or failure in delivery or receipt
of Products hereunder when the supplies of the Buyers or Sellers or the facilities of production manufacture, consumption, transportation, distribution of the Buyer and Seller are impaired by causes beyond the Buyer's or Seller's control, or by the order, requisition, request or recommendation of any governmental agency or acting governmental authority, or the Buyer's or Seller's compliance therewith, or by governmental proration, regulation or priority, or from any delay or failure due to any causes beyond the Buyer's or Seller's control similar or dissimilar to any such cases. When such cause or causes exist,
the affected party shall have the right, upon notice without delay as soon as practicable to the other of the nature and probable duration of such cause or causes, to restrict or cease deliveries or acceptance hereunder in a fair and equitable manner for the duration of such cause.

## 17. CANCELLATION

**17.1** Where the Seller cancels a Contract due to the Buyer's breach of the Contract or conduct on the part of the Buyer entitling the Seller to cancel or the Seller establishing that sanctions are in force necessitating its withdrawal from a Contract then the Buyer shall have no recourse to the Seller and the Buyer shall be responsible for all losses, costs and expenses suffered by the Seller by reason of the cancellation, which shall include but not be limited to the Seller's loss of profit on the Contract, costs or charges reasonably incurred to the Seller's sub-contractors or suppliers, and administrative costs.

**17.2** Where the Buyer cancels the supply after the Order Confirmation the Buyer shall be liable for any costs, expenses or charges incurred by the Seller and the Buyer shall be liable to pay to the Seller the difference between and the price payable to the Seller's supplier and its selling price to the Buyer, such sums to be paid immediately upon demand.

## 18. LAW AND JURISDICTION

**18.1** These STCS and all Contracts are governed by the general maritime law of the United States of America and disputes shall be determined by Arbitration in London by a sole arbitrator according to the LMAA Rules 2017. The laws of the United States, including but not limited to the Commercial Instruments and Maritime Lien Act, shall always apply with respect to the existence of a maritime lien, regardless of the country in which the Seller takes legal action. In case of breach of contract by the Buyer, the Seller shall be entitled to take such legal action in any court of law in any state or country which the Seller may choose and which
the Seller finds relevant in order to safeguard or exercise the Seller's rights in pursuance of this present Agreement. The Seller shall be entitled to assert its rights of lien or attachment or other rights, whether in law, in equity, or otherwise, in any jurisdiction where the Vessel may be found.

**18.2** The 1980 United Nations Convention on Contracts for the International Sale of Goods (CISG) shall not apply.